UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELEANOR J. KERRIGAN and )
SEAN J. KERRIGAN, )
a minor child, by his parent and next best )
friend, Eleanor J. Kerrigan )
)
   Plaintiff, )   C.A. No.: 04CV12133 RCL
)
v. )
)
JOHN W. CURRAN, )
DIEBOLD, INC. and CRAWFORD )
& COMPANY )
)
   Defendants. )

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE DEFENDANT, DIEBOLD, INC., TO DISMISS COUNT IV OF THE PLAINTIFFS' COMPLAINT, OR, IN THE ALTERNATIVE, TO SEVER AND STAY COUNT IV OF THE PLAINTIFFS' COMPLAINT

### INTRODUCTION

In this motor vehicle negligence case, the plaintiffs have alleged in Count IV of their complaint that Diebold, Inc. ("Diebold") engaged in unfair settlement practices in violation of M.G.L. c. 93A and c. 176D. Diebold has now moved to dismiss these claims on grounds that it cannot be held liable under M.G.L. c. 176D and c. 93A as a matter of law, because Diebold is not engaged in the business of insurance and, therefore, it is not subject to the unfair settlement provisions set forth exclusively for insurers in the statute. Alternatively, Diebold has moved that the Court sever and stay these claims, including all related discovery, pending the resolution of the underlying negligence claims against the defendants.

## FACTUAL & PROCEDURAL HISTORY

At its core, this case is a motor vehicle negligence action. The plaintiffs allege that on November 14, 2002, John Curran, a Diebold, Inc. (hereinafter "Diebold") employee, accidentally struck Eleanor Kerrigan with his car at the intersection of Salem Street and Sheridan Avenue in Medford, Massachusetts. At the time of the accident, Ms. Kerrigan was working as a crossing guard. Her adult son, Sean Kerrigan, is alleged to have a mental impairment, such that he has asserted claims against the defendants for an alleged loss of parental consortium.

In Count IV of their Complaint, the plaintiffs seek to recover multiple damages and other relief from Diebold for alleged violations of M.G.L. c. 93A and c. 176D. Specifically, they claim that Diebold engaged in unfair or deceptive claims settlement practices by virtue of its alleged failure to effectuate a prompt, fair and equitable settlement of the plaintiffs' claims while "acting as an insurer licensed to do business in the Commonwealth of Massachusetts." See Plaintiffs' Complaint, Count IV ¶ 30.

Although not germane to the legal issues raised by this motion, Diebold denies the plaintiffs' assertions. Liability was not reasonably clear within the meaning of G.L. c. 176D and its interpretive case law, and the plaintiffs refused, despite repeated requests, to provide adequate documentation of the nature and extent of the plaintiffs' damages. Nevertheless, Diebold made numerous pre-suit attempts to reach a settlement with the plaintiffs. Among other things, these efforts consisted of extending multiple and substantial good faith settlement offers to the plaintiffs prior to their institution of this lawsuit, and the convening of a mediation conference in an attempt to reach a settlement agreement. The defendant's

settlement offers, which were extended both prior, during and subsequent to the mediation, were rejected by the plaintiffs. Inexplicably, the plaintiffs withdrew all prior settlement demands after the mediation and refused to tender any further specific monetary demands. Yet, having withdrawn all settlement demands, the plaintiffs continued to send further so-called letters to Diebold and Crawford & Company under c. 176D insisting that Diebold extend further settlement offers, even though the plaintiffs themselves refused to tender a demand for any specific sum. Diebold's efforts to reach a settlement, together with the plaintiffs' conflicting and often confusing settlement tactics, are reflected in pre-suit correspondence exchanged between counsel. Again, while not necessary to decide this motion, the history of these discussions may prove enlightening to the Court and, therefore, copies of these letters are collectively attached hereto as Exhibit "A.".

Whatever the rationale for the plaintiffs' settlement positions, the Complaint that they filed to institute this lawsuit included claims that Diebold and co-defendant, Crawford & Company, engaged in unfair claim settlement practices in violation of M.G.L. c. 176D and c. 93A.. With respect to Diebold, these allegations appear in Count IV of the plaintiffs' Complaint.

As discussed in greater detail below, Diebold is not engaged in the business of insurance nor has it been engaged in the business of insurance at any time from 2002, the year in which the subject accident occurred, to the present. See Affidavit of Mark C. Tucker, attached as Exhibit "B". Specifically, at no point during that time period has Diebold issued policies of insurance, underwritten insurance coverage, collected premiums, or engaged in any other such insurance activity that an insurance company subject to M.G.L.

3

c. 176D would ordinarily conduct for profit. Id. In fact, Diebold is a company that manufactures and sells integrated self-service banking, voting and security systems, and other software and services, including ATMS, vaults and drive–up banking systems, voting machines, and integrated security card access and vending systems. Id. Moreover, at the time of the plaintiffs' accident, Diebold was insured under a Commercial Auto Insurance Policy with Zurich-American Insurance Company that contained a $500,000 deductible retention for accidents involving bodily injury and property damage. Id.

Although Diebold denies that it ever acted in bad faith or otherwise engaged in conduct that could remotely be characterized as an unfair claim settlement practice, that issue is wholly irrelevant and need not be addressed because Diebold is not an insurer and, therefore, c. 176D does not apply to Diebold. The plaintiffs' claims that Diebold was "acting as an insurer licensed to do business in the Commonwealth of Massachusetts" has no basis in fact and is simply not supported by Massachusetts law. Accordingly, Diebold has moved to dismiss Count IV of the plaintiff's Complaint, in support of which this Memorandum of Law is submitted. In the unlikely event that Diebold is somehow deemed to be an insurer -- which Diebold expressly denies -- Diebold moves in the alternative that the claims raised in Count IV be severed and stayed pending resolution of the underlying tort claims.

## ARGUMENT

**I.**  **COUNT IV OF THE PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE DIEBOLD IS NOT ENGAGED IN THE BUSINESS OF INSURANCE AND, THEREFORE, CANNOT BE SUBJECT TO M.G.L. C. 176D OR LIABLE UNDER C. 93A**

Massachusetts General Laws c. 176D, §1(a) defines insuring entities subject to the provisions of this act, in relevant part, as "any individual, corporation, association, partnership, ... and any other legal entity or self insurer which is engaged in the business of insurance, including agents, brokers, and adjusters...." M.G.L. c. 176D, §1(a). Thus, the Supreme Judicial Court has concluded that there is no independent right of action under M.G.L. c. 93A, §9 or M.G.L. c. 176D for unfair or deceptive claims settlement practices by a self-insuring corporate entity that is engaged in a trade or business other than the insurance business. See Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 453-458 (2004)(setting aside the contrary holding of the Appeals Court, reported at 59 Mass.App.Ct. 613, 617-621 (2003)). Moreover, the Massachusetts courts have consistently held that the business of insurance "involves profit driven business decisions about premiums, commissions, marketing, reserves and settlement policies and practices." Id. at 455-456, quoting Poznik v. Massachusetts Med. Professional Ins. Assn., 417 Mass. 48, 51, (1994); and citing Anzalone v. Massachusetts Bay Transp. Auth., 403 Mass. 119, 122 (1988) (excluded from M.G.L. c. 176D are self-insurers except if engaged in the business of insurance).

In Morrison, the Supreme Judicial Court held that summary judgment was properly granted dismissing a plaintiff's complaint, which had alleged that a retail toy company violated M.G.L. c. 93A, §9, and c. 176D, §3(9) by the conduct of its risk management department during settlement negotiations with the plaintiff concerning her negligence claim against the company. 441 Mass. at 453-458. The Court reasoned that "Toys R. Us" had no duty to effectuate a prompt and equitable settlement with the plaintiff, under either M.G.L. c. 93A and c. 176D, because a retail toy company not engaged in the business of insurance is

not subject to the unfair settlement prohibitions set forth exclusively for insurers in M.G.L. c. 176D. Id.

In this case, Deibold clearly does not fall within the statutory definition of an "insurer," because, as a manufacturer and seller of integrated self-service banking, voting and security systems, it does not engage in the business of insurance. See Affidavit of Mark Tucker, Exhibit " B" hereto. Moreover, that Diebold, like the defendant in Morrison, has a risk management department to make decisions about settlement of potential claims, does not subject Diebold to the regulation of insurance activities set forth in M.G.L. c. 176D. See Morrison, at 455. Similarly, even though Diebold has a $500,000 deductible retention under its insurance policy with Zurich-American Insurance Company, the case law makes clear that such a retention does not in any way magically transform Diebold into an insurer or otherwise subject Diebold to M.G.L. c. 176D. See Anzalone v. Massachusetts Bay Transp. Auth., 403 Mass. 119, 122 (1988). The essential and ultimately dispositive point remains that Diebold derives its profits from the sale of self-service, banking, voting and security systems, and not from an insurance business in which it does not engage.

If the express language of the statute was not clear enough, then the decisions of the Massachusetts Courts have certainly made clear that Chapter 176D applies only to entities engaged in the business of insurance. As the facts cited above establish, Diebold is not engaged in the business of insurance and, therefore, cannot be held liable for any alleged – albeit false – failure to effectuate a prompt and equitable settlement with the plaintiffs. To hold otherwise would be in contravention of the Supreme Judicial Court's pronouncement in Morrison, as well as with the other decisions of the Massachusetts Courts. Accordingly,

the plaintiffs' claims for unfair settlement practices against Diebold set forth in Count IV of the Plaintiffs' Complaint should be dismissed.

## II.   IN THE ALTERNATIVE, THE PLAINTIFFS' UNFAIR SETTLEMENT PRACTICES CLAIM IS PREMATURE AND SHOULD BE SEVERED AND STAYED PENDING RESOLUTION OF THEIR NEGLIGENCE CLAIMS TO AVOID PREJUDICE TO THE DEFENDANTS.

Assuming arguendo that Diebold could even be deemed to have engaged in the business of insurance and, therefore, subject to M.G.L. c. 93A and c. 176D, whether Diebold engaged in unfair settlement practices cannot be determined until the merits of the negligence claims against the defendants are decided. This is so because Diebold's purported duty to effectuate a prompt and equitable settlement under M.G.L. c. 176D would only be triggered when liability for the plaintiffs' disputed claims became reasonably clear. M.G.L. c. 176D, §3(9)(f); see also Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 453-458 (2004); O'Leary-Allison v. Metropolitan Property & Casualty Ins. Co., 52 Mass.App.Ct. 214 (2001)(an insurer's duty to settle arises when liability becomes reasonably clear). It is well settled under Massachusetts law that liability under M.G.L. c. 176D, §3(9)(f) encompasses both "fault" and "damages." See Clegg v. Butler, 424 Mass. 413, 421 (1997). Thus, even if we put aside the numerous good faith efforts by Diebold to settle the plaintiffs' claims, a determination of whether Diebold violated this purported duty cannot be made until it is all issues of "fault" and "damages" have been determined in the first place.

Simply put, the plaintiffs' claims for unfair settlement practices are premature and not yet ripe for adjudication. The time, effort and resources of both the Court and the parties, which would be put toward litigating the plaintiffs' unfair settlement practices claim against Diebold, would be wasteful, costly and, ultimately, futile.

Of even greater concern, allowing discovery to proceed on these claims would, among other things, severely compromise both Diebold's and Mr. Curran's defense by disclosing to the plaintiff prior to trial, confidential material, work product, and materials prepared in anticipation of litigation. See <u>Roddy & McNulty Insurance Agency, Inc. v. A.A. Proctor & Co.</u>, 16 Mass. App. Ct. 525 (1983); see also <u>Kai v. Kim-Son</u>, Appeals Court NO.98-J-65 (Spina, J. 1998); <u>Belcher v. Pawtucket Mut. Ins. Co.</u>, Appeals Court No. 89-J-672 (Kass, J. 1989); <u>Gross v. Liberty Mutual Ins. Co. and CNA Ins. Co.</u>, Appeals Ct. No. 84-0138 (Kass, J. 1984)[1]. In particular, the plaintiffs would likely request documents contained in the defendants' claims file, and such discovery would reveal the work product of Diebold and Crawford & Company's representatives and their attorneys, including their evaluation of the merits of the plaintiffs' claims, and their mental impressions and defense strategies prior to trial. Accordingly, allowing this discovery would severely prejudice and result in irreparable harm to Diebold, Mr. Curran and Crawford & Company.

Finally, there will be no prejudice to the plaintiffs if their M.G.L. c. 93A and c. 176D claims against Diebold and Crawford & Company are severed and stayed in all respects, including discovery, pending the outcome of the negligence and loss of consortium claims against the defendants. Should the plaintiffs prevail on their underlying tort claims against the defendants, an order severing and staying their unfair settlement practices claims in the interim will not prevent the plaintiffs from pursuing subsequent claims under M.G.L. c. 93A and c. 176D against the defendants, assuming such claims are even legally viable.

---

[1] Copies of these decisions are attached to the memorandum of law of Crawford & Company filed in support of its own motion to sever and stay the plaintiff's bad faith claims.

Accordingly, the plaintiffs' claims of unfair settlement practices against Diebold set forth in Count IV of the Plaintiffs' Complaint should be severed and stayed, including all discovery related to these claims, pending the resolution of the underlying negligence and loss of consortium claims against the defendants.

## CONCLUSION

Wherefore, the defendant, Diebold, Inc., respectively requests that this Court dismiss Count IV of the plaintiffs' Complaint, or, in the alternative, sever and stay these claims, including all discovery relating thereto, pending the resolution of the underlying tort claims against the defendants.

The Defendant,
Diebold, Inc.
By its Attorneys,

Edward D. Shoulkin
BBO # 555483
Edward Coburn
BBO # 655916
TAYLOR, DUANE, BARTON
& GILMAN, LLP
160 Federal Street, 5th Floor
Boston, MA 02110
(617) 654-8200

### CERTIFICATE OF SERVICE

I, Edward D. Shoulkin, hereby certify that a true copy of the above document was served upon counsel of record for each other party by First Class Mail on January 19, 2005.

Edward D. Shoulkin

9

ALLAN E. TAYLOR*
JAMES J. DUANE III*
JOHN J. BARTON*
PAMELA SLATER GILMAN*
EDWARD D. SHOULKIN*
JENNIFER ELLIS BURKE*
FRANCIS A. CONNOR III**
ROBERT C. SHINDELL**
CRAIG R. WAKSLER**
STEPHEN ADAMS***
SHERI L. PIZZI**
ANDRIA COLETTA*†
TAMARA J. SMITH*
ROBERT M. ELMER**‡
JENNIFER LYNCH BUCKLEY**
CAROLE L. McLAUGHLIN**
ERIC M. CHODKOWSKI*
LAWRENCE T. GINGROW III**
TIMOTHY E. BRAY*§
EDWARD COBURN**
ANDREW C. COULAM**
ANDREW R. WEINER*
C. MURRAY HARRIS*
KRISTIE L. McCANN□

* admitted in Massachusetts
* admitted in Rhode Island
* admitted in Connecticut
* admitted in New York
* admitted in Maine
□ admitted in Texas

# TAYLOR
# DUANE
# BARTON &
# GILMAN, LLP

### Attorneys at Law

**111 Devonshire Street**
**Boston, Massachusetts 02109**

**617/654-8200**
**Fax 617/482-5350**
**www.tdbgllp.com**

10 Dorrance Street, Suite 700
Providence, Rhode Island 02903

401/273-7171
Fax 401/273-2904

WRITER'S E-MAIL
ADDRESS
eshoulkin@tdbgllp.com

July 19, 2004

Andrew J. Schultz, Esq.
50 Mall Road, Suite 209
Burlington, MA  01803

Re: <u>Eleanor & Sean Kerrigan</u>

Dear Andy:

I write in response to your July 7, 2004 letter.

Diebold has made multiple good faith settlement offers to the Kerrigans, all for substantial sums.  These offers were extended before, during and after the mediation that Diebold arranged.  Regrettably, your July 7th letter resorts to caustic and erroneous characterizations of these offers, as well as of our prior correspondence.   Responding to such argumentative comments serves no purpose, however, certain substantive issues raised by your July 7th letter require attention, including your unfortunate change of heart with regard to the provision of signed records authorizations.

As you know, during our telephone conversation of June 18, 2004, I asked you to have your clients sign and return authorizations for the release of their medical and employment records.  You expressly agreed to this request, and I assured you that copies of all records received in response to the authorizations would be provided to you by my office. Your agreement to comply with this simple request was made without any reservations, conditions or qualifications.  Contrary to the implication of your July 7th letter, the

Andrew J. Schultz, Esq.
July 19, 2004
Page 2

agreement was in no way tied to the amounts that Diebold had offered in settlement of the claim. Indeed, you were aware of Diebold's settlement offer of $325,000 at the time of our agreement, since it was extended during the very same telephone conversation. I mailed the authorization forms to you shortly thereafter. Andy, I believe it is in your interest as well as ours that you keep your word, honor our agreement and provide the requested authorizations. I ask that you do so without delay.

Second, your July 7th letter "suggests" that I confer with Diebold for the purpose of extending another settlement offer, specifically what you characterize as a "reasonable" offer in an offhand way of disparaging Diebold's prior offers. However, your June 18, 2004 letter not only confirmed your earlier rejection of Diebold's $325,000 settlement offer, but also stated that, effective June 15th, the date of the mediation, the Kerrigans had withdrawn all settlement demands. Thus, we understood that, by virtue of your June 18th letter, the Kerrigans had no settlement demands on the table for consideration by Diebold. Could you please clarify whether your July 7th request for a settlement offer means that the Kerrigans will tender a settlement demand for Diebold's consideration, in contrast to the position stated in your June 18th letter?

I look forward to receiving the signed authorizations that you previously agreed to produce and otherwise hearing from you.

Very truly yours,

Edward D. Shoulkin

EDS/sml

JUL 0 8 2004

LAW OFFICES OF

# Andrew J. Schultz, P.C.

50 Mall Road, Suite 209, Burlington, Massachusetts 01803      Tel: 781.229.0440      Fax: 781.229.0483
390 Main Street, Suite 543, Worcester, Massachusetts 01608     Tel: 508.767.0700      Fax: 508.767.0660
1361 Elm Street, Suite 408B, Manchester, New Hampshire 03101   Tel: 603.622.4531      Fax: 603.622.4539

Andrew J. Schultz*                                             www.schultzlawoffice.com
Loki S. Henderson

*Admitted in Massachusetts and New Hampshire                  Please Reply to: Burlington

July 7, 2004

Edward D. Shoulkin, Esq.
Taylor, Duane, Barton & Gilman, LLC
111 Devonshire Street
Boston, MA  02109

                    Re:   Eleanor and Sean Kerrigan v. Diebold/Curran/Crawford & Co.

Dear Mr. Shoulkin:

       I am in receipt of your correspondence dated June 28, 2004 and find it rather
disconcerting.  In my opinion, the fact of the matter remains that your client has yet to
make a reasonable settlement offer given the severity of this case.  I was hopeful I would
be able to work with you on this matter, however your correspondence makes it rather
clear you are intent on distorting the facts concerning our settlement negotiations, I
presume in an attempt to mask your client's woefully inadequate settlement offer.  In any
event, I am more than comfortable in putting the facts of this case in front of a jury and
shall proceed accordingly.  Additionally, given your client's continued bad faith in this
matter, my client will not be voluntarily providing medical authorizations as you will
have every opportunity to request their medical records through discovery.

       May I suggest that you discuss this matter further with your client and if they
wish to provide a reasonable settlement offer, please forward the same to our Burlington
office.

Very truly yours,

Andrew J. Schultz

Cc:    Thomas P. Masiello, Jr., Esq.
       Nancy Curtatone, Esq.

AJS/kad

# TAYLOR
# DUANE
# BARTON &
# GILMAN, LLP

**Attorneys at Law**

**111 Devonshire Street**
**Boston, Massachusetts 02109**

**617/654-8200**
**Fax 617/482-5350**
**www.tdbgllp.com**

June 28, 2004

ALLAN E. TAYLOR*
JAMES J. DUANE III*
JOHN J. BARTON**
PAMELA SLATER GILMAN*
EDWARD D. SHOULKIN*
JENNIFER ELLIS BURKE*
FRANCIS A. CONNOR III**
ROBERT C. SHINDELL*
CRAIG R. WAKSLER**
STEPHEN ADAMS***
SHERI L. PIZZI**
ANDRIA COLETTA**
TAMARA J. SMITH*
ROBERT M. ELMER***
JENNIFER LYNCH BUCKLEY**
CAROLE L. McLAUGHLIN**
ERIC M. CHODKOWSKI*
LAWRENCE T. GINGROW III**
TIMOTHY E. BRAY**
EDWARD COBURN**
ANDREW C. COULAM**
ANDREW R. WEINER*
C. MURRAY HARRIS*
KRISTIE L. McCANN○

* admitted in Massachusetts
* admitted in Rhode Island
* admitted in Connecticut
* admitted in New York
* admitted in Maine
○ admitted in Texas

10 Dorrance Street, Suite 700
Providence, Rhode Island 02903

401/273-7171
Fax 401/273-2904

WRITER'S E-MAIL
ADDRESS
eshoulkin@tdbgllp.com

**By Certified Mail**

Andrew J. Schultz, Esq.
50 Mall Road, Suite 209
Burlington, MA 01803

Re: Eleanor & Sean Kerrigan

Dear Mr. Schultz:

We write in response to your letters of June 17, 2004 addressed to Diebold and Crawford & Company in which you request a "reasonable settlement offer." Reasonable settlement offers have previously been extended, and from our telephone conversation of June 18, 2004, you already know that Diebold has extended a $325,000 offer in settlement of all claims arising from or related to the subject accident. Before returning to the terms of that offer, we call your attention to various assertions, as well as omissions, in your letters that require correction.

First, your letters fail to mention Diebold's prior settlement offers and your clients' responses thereto. For example, you no doubt recall that Diebold, through Crawford & Company, made an initial settlement offer in the amount of $250,000 during the same conversation in which you tendered a demand of $500,000. You subsequently denied having tendered a formal demand of $500,000 in your discussions with Crawford, only to appear at the June 15, 2004 mediation with Judge Shubow at which time you, in fact, tendered a settlement demand for precisely that amount.

Andrew J. Shultz, Esq.
June 28, 2004
Page 2

Further, your decision to attend the mediation should have represented a genuine interest in reaching an agreement, even though you appeared without your clients. Unfortunately, your inflexible settlement positions and unsupported allegations rendered the entire proceeding an exercise in futility. This became evident early on when you and your co-counsel refused to respond to Diebold's prior offer of $250,000, prompting Diebold to unilaterally increase its offer to $275,000. Your response to that offer went something like this: You rejected the offer (Diebold's second) and said that you would "recommend" a $450,000 offer to your clients, but that you could not guarantee that they would even accept it. You explained that your clients had not authorized you to tender a $450,000 demand, although, of course, they always were only a phone call away. Putting any possible settlement further out of reach, you advised that this purported demand represented your bottom line, and that any offers below $450,000 would be summarily rejected.

Your rationalization for the settlement positions that you and your co-counsel took at the mediation are also worth noting. Mindful that the last treatment records you provided to us from the period of January through April of 2003 indicate that your client had made an excellent recovery, was doing "remarkably well," and was able to walk without pain or discomfort, you told the mediator that more recent medical evaluations of Ms. Kerrigan indicate that she is experiencing new problems and impairments as a direct result of the accident. Yet, despite the importance you placed on these recent evaluations in justifying your settlement demand, you have not obtained, let alone produced, records for these recent evaluations. Given the significance of your assertions concerning Ms. Kerrigan's current condition and the large sums that you have demanded for settlement, you certainly must have known how important such records would be to both Diebold and the mediator, and your failure to obtain and provide this information defies logic.

By contrast, the bases for Diebold's settlement position were set forth in detail in the Mediation Memorandum that we submitted, which expressly relies upon Ms. Kerrigan's actual, produced treatment records. As you also know, those records directly contradict many of the unsupported and undocumented claims of damages that you advanced at the mediation. Rather than repeat the contents of the memorandum, we attach a copy of it as Exhibit "A" hereto for reference.

Two days after you commented at the mediation that offers below $450,000 would never be accepted, you then sent the aforementioned letter, which purports to seek an offer under Chapter 176D. The letter is defective for a number of factual and legal reasons, some of which have already been brought to your attention. Thus, we previously pointed out to you that Diebold is not an insuring entity and, therefore, is not subject to G.L. c. 176D, which you cite in your recent letter. Accordingly, that statute will not support a Chapter 93A claim against Diebold.

Further, it is unclear why you have sent an essentially identical letter to both Diebold and Crawford & Company. Crawford is not an insurer for Diebold. Crawford's only role in this matter is to provide claims adjusting services to Diebold. If you sent the letter to

Andrew J. Shultz, Esq.
June 28, 2004
Page 3

Crawford on some other basis, then please explain it, as it does not appear in this or any other letter you have sent in connection with this claim. Additionally, your letter's failure to set forth a settlement demand renders it defective.

You further acknowledged during our June 18th telephone conversation that, despite having sent a self-styled Chapter 176D letter, you intended to reject any offer from Diebold under $450,000, a sum for which you still claimed you lacked settlement authority. Indeed, when I asked you what purpose would be served by extending another offer that your clients would invariably reject, you suggested that Diebold should not even bother extending another offer. Given the history of your negotiating tactics, it is clear that your June 17th letters were not intended to explore a settlement of this claim, but merely constitute a flawed attempt to invoke Chapters 93A and 176D in the hopes of availing your clients of the remedies under those statutes. We nevertheless extended an offer (Diebold's third offer) in the amount of $325,000 to Eleanor and Sean Kerrigan, subject to the same terms and conditions referenced in my letter to you dated June 9th.

Diebold has acted in good faith throughout. Regrettably, your tactics have undermined these efforts, and you appear intent on filing suit regardless of the exceptionally reasonable offers extended thus far. If you wish to discuss this matter further, you may contact us at your convenience. In the interim, we await your provision of the signed authorizations for the release of your clients' medical and employment records, which you agreed to provide to us during our June 18th telephone conversation.

Very truly yours,

Edward D. Shoulkin

EDS/
Enclosure

LAW OFFICES OF

# Andrew J. Schultz, P.C.

JUN 2 4 2004

50 Mall Road, Suite 209, Burlington, Massachusetts 01803      Tel: 781.229.0440      Fax: 781.229.0483
390 Main Street, Suite 543, Worcester, Massachusetts 01608     Tel: 508.767.0700      Fax: 508.767.0660
1361 Elm Street, Suite 408B, Manchester, New Hampshire 03101   Tel: 603.622.4531      Fax: 603.622.4539

Andrew J. Schultz*                                             www.schultzlawoffice.com
Lotk S. Henderson

*Admitted in Massachusetts and New Hampshire                  Please Reply to: Burlington

June 23, 2004

Edward D. Shoulkin, Esq.
Taylor, Duane, Barton & Gilman, LLP
111 Devonshire Street
Boston, MA  02109

       RE:   Eleanor Kerrigan v. Diebold, Inc.

Dear Mr. Shoulkin:

     I recently had the opportunity to discuss your most recent $325,000.00 settlement
demand provided during our telephone conversation of June 18, 2004.  Please be advised
I have discussed this matter with my client who has rejected your offer at this time.

     Thank you for your attention to this matter and please feel free to contact me with
any questions or concerns.

Very truly yours,

Andrew J. Schultz

Cc:   Mrs. Eleanor Kerrigan

AJS/kad

LAW OFFICES OF

# Andrew J. Schultz, P.C.

50 Mall Road, Suite 209, Burlington, Massachusetts 01803      Tel: 781.229.0440      Fax: 781.229.0483
390 Main Street, Suite 543, Worcester, Massachusetts 01608      Tel: 508.767.0700      Fax: 508.767.0660
1561 Elm Street, Suite 408B, Manchester, New Hampshire 03101      Tel: 603.622.4531      Fax: 603.622.4539

Andrew J. Schultz*                                                www.schultzlawoffice.com
Loik S. Henderson

*Admitted in Massachusetts and New Hampshire                     Please Reply to:  Burlington

June 18, 2004

Edward D. Shoulkin, Esq.
Taylor, Duane, Barton & Gilman, LLP
111 Devonshire Street
Boston, MA  02109

                    RE:    Eleanor Kerrigan v. Diebold, Inc.

Dear Mr. Shoulkin:

        Pursuant to our conversation at the mediation, please be advised all settlement
demands made on Mrs. Kerrigan's behalf have been withdrawn.

        I look forward to working with you on this case and please feel free to contact me
with any questions or concerns.


Very truly yours,


Andrew J. Schultz




Cc:    Mrs. Eleanor Kerrigan

AJS/kad

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELEANOR J. KERRIGAN and )
SEAN J. KERRIGAN, )
a minor child, by his parent and next best )
friend, Eleanor J. Kerrigan )
 )
   Plaintiff, )  C.A. No.: 04CV12133 RCL
 )
v. )
 )
JOHN W. CURRAN, )
DIEBOLD, INC. and CRAWFORD )
& COMPANY )
 )
   Defendants. )

## AFFIDAVIT OF MARK C. TUCKER

I, Mark C. Tucker, on oath depose and state as follows:

1.     I have been employed by Diebold, Inc. ("Diebold") since 1986, and have held the position of Corporate Risk Manager for Diebold from 1990 to the present. I have personal knowledge regarding Diebold's products, services and general business operations. I also have personal knowledge regarding the insurance coverage that Diebold purchases to cover various risks.

2.     Diebold is a corporation organized under the laws of the State of Ohio. Diebold is currently registered to do business in Massachusetts as a foreign corporation, and was so registered in 2002, which I understand to be the year in which the automobile accident occurred that gave rise to this lawsuit.

3.    Diebold is in the business of manufacturing and selling integrated self-service banking, voting and security systems, and other software and services, including automated teller machines, drive–up banking systems, voting machines, and integrated security card access and vending systems.

4.    Diebold is not in the business of insurance, nor was Diebold in the business of insurance at any time from 2002 (the year in which the subject accident occurred) to the present. At no time from 2002 to the present has Diebold issued policies of insurance, underwritten insurance coverage, collected insurance premiums, marketed insurance or otherwise engaged in any other such insurance activity for profit.

5.     At the time of the automobile accident described in the plaintiffs' Complaint, Diebold was insured under a Commercial Auto Insurance Policy (Policy No. BAP9302929-00) issued by Zurich-American Insurance Company for the period of March 1, 2002 to March 1, 2003. This policy contained a $500,000 deductible retention for accidents involving bodily injury and property damage.

SUBSCRIBED AND SWORN ON THIS 19 DAY OF JANUARY, 2005 UNDER

THE PAINS AND PENALTIES OF PERJURY.

Mark C. Tucker
Corporate Risk Manager
Diebold, Inc.